## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 18 2020, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Vincent M. Campiti
Nemeth, Feeney, Masters & Campiti, P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Benito Pedraza,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 18, 2020

Court of Appeals Case No.
19A-CR-2559

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford, Judge

Trial Court Cause No.
71D03-1709-MR-13

**Najam, Judge.**

# Statement of the Case

Benito Pedraza appeals his two convictions for murder following a jury trial. Pedraza raises four issues for our review, which we restate as the following issue: whether the trial court abused its discretion in the admission of certain evidence at Pedraza's trial. We affirm.

# Facts and Procedural History

In August of 2017, Pedraza, his brother, Jesus, and Jermon Gavin agreed to arrange a drug buy from Joshua Sage and Ronald Snyder at Snyder's residence in South Bend. Pedraza and his confederates intended to rob Sage and Snyder during the purported buy. The parties arranged for the drug buy to occur on August 2, and, prior to leaving for Snyder's residence that day, Jesus gave Gavin a 9mm handgun "for being part of the squad." Tr. Vol. 3 at 12.

En route to Snyder's, Damon Bethel joined Pedraza's group, and Pedraza drove the four men to Snyder's residence in a dark colored Impala. Each man was armed. Gavin had a 9mm Smith & Wesson handgun, Pedraza had a Glock 17 or 19 handgun, Jesus had a .38 Special revolver, and Bethel had a .45 caliber handgun. On the way, the men were "doing a little cocaine," and Gavin said that he did not think the robbery was "going to happen the way we think it's going to happen." *Id.* at 19. Bethel then suggested, "let's just not do it." *Id.* Pedraza and Jesus, however, told the other two that they "owe us . . . some money so this can clear that up." *Id.*

[4] Pedraza parked the Impala in front of Snyder's residence. Gavin and Jesus then exited the Impala and met Snyder and Sage at the entrance to Snyder's garage. Alyssa Sanchez was also at the residence and began a conversation with Gavin and Jesus. While Sage weighed the contraband, Jesus returned to the Impala, ostensibly to obtain the money from Pedraza to complete the purchase. However, on his way back to the Impala, Jesus called Gavin's cell phone and said, "I'm not going to lie. I need that shit. I 'finna' to send [Bethel] in." *Id.* at 30. Jesus then hung up.

[5] At the same moment that Bethel was approaching the garage to engage in the armed robbery, a white SUV entered the driveway to pick up Sanchez. Gavin then observed Pedraza exit the Impala "with his gun." *Id.* at 31. Bethel then demanded the contraband, and next Gavin heard "a whole bunch of shots going off," with the first shot coming from the direction of the Impala. *Id.* Gavin fled back to the Impala "trying to not get hit by" Pedraza's shooting. *Id.* at 31-32. Gavin did not observe Jesus fire any shots. Pedraza then fled the scene in the Impala with Jesus and Gavin.

[6] The South Bend Police Department heard the gunshots at Snyder's residence, and Officer Joshua Morgan responded to the scene within moments. There, he found Bethel's body, and he found Sage in the garage inflicted with a gunshot wound. Officer Mollie O'Blenis also responded to the scene but was stopped on an adjacent street by a car crash. That crash involved a white SUV in which the driver, Anton James, had been shot dead. Sanchez was lying unconscious nearby, apparently ejected from the SUV. From Snyder's residence, officers

recovered numerous fired shell casings, a surveillance video of the driveway, and more than 550 grams of apparent methamphetamine.

The State charged Pedraza in relevant part with two counts of murder. At his ensuing jury trial, Gavin testified to the conspiracy to rob Sage and Snyder and the ensuing events, much of which was over Pedraza's objections. The State also had admitted into evidence, again over Pedraza's objections, numerous autopsy photographs of the two victims, Bethel and James, along with crime-scene photographs. And the trial court limited Pedraza's cross-examination of one of the investigating detectives and a forensic expert who analyzed DNA evidence on the recovered shell casings. Thereafter, the jury found Pedraza guilty of two counts of murder, and the trial court entered its judgment of conviction and sentenced Pedraza to an aggregate term of sixty years. This appeal ensued.

## Discussion and Decision

Pedraza appeals his two convictions for murder and challenges several evidentiary decisions made by the trial court during his jury trial. Our Supreme Court has explained our deferential standard of review in such appeals:

> "Trial judges are called trial judges for a reason. The reason is that they conduct trials. Admitting or excluding evidence is what they do." *United States v. Hall*, 858 F.3d 254, 288 (4th Cir. 2017) (Wilkinson, J., dissenting). That's why trial judges have discretion in making evidentiary decisions. This discretion means that, in many cases, trial judges have options. They can admit *or* exclude evidence, and we won't meddle with that decision on appeal. *See Smoote v. State*, 708 N.E.2d 1, 3 (Ind.

1999). There are good reasons for this. "Our instincts are less practiced than those of the trial bench and our sense for the rhythms of a trial less sure." *Hall*, 858 F.3d at 289. And trial courts are far better at weighing evidence and assessing witness credibility. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). In sum, our vantage point—in a "far corner of the upper deck"— does not provide as clear a view. *State v. Keck*, 4 N.E.3d 1180, 1185 (Ind. 2014).

*Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017). We will reverse a trial court's evidentiary decisions only for an abuse of that discretion, which occurs when the trial court's judgment is "clearly against the logic and effect of the facts and circumstances" that were before the court. *Fairbanks v. State*, 119 N.E.3d 564, 568 (Ind. 2019).

[9]     Pedraza first asserts that the trial court abused its discretion when it admitted several autopsy and crime-scene photographs. In particular, Pedraza asserts that State's Exhibits 6, 9, 26, 29, 38, and 39 were each unduly gruesome. As such, he continues, their probative value, which Pedraza does not challenge, was substantially outweighed by the danger of unfair prejudice.

[10]    Indiana Evidence Rule 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice . . . ." But our Supreme Court has made clear that "this balancing is committed to the trial court's discretion." *Snow*, 77 N.E.3d at 179. Again, Pedraza does not challenge the probative value of the photographs. Rather, he only challenges whether the trial court properly balanced the probative value with the danger of unfair prejudice. As that balancing is committed to the trial

court's discretion, we conclude that Pedraza has not met his burden on appeal to show that the trial court erred when it did not exclude those photographs.

[11] Pedraza next asserts that the court erred when it permitted Gavin to testify to certain events. Specifically, he asserts that Gavin should not have been permitted to testify that Jesus had given him a firearm for "being part of the squad." Appellant's Br. at 17. He also asserts that Gavin should not have been permitted to testify that, when he had expressed doubts about the robbery going the way they had planned it, Jesus responded that going through with the robbery would absolve Gavin of a debt he owed to Jesus and Pedraza.[1]

[12] The trial court admitted the above out-of-court statements over Pedraza's hearsay objections because the statements were of a co-conspirator during the course and in furtherance of the conspiracy, which, under Indiana Evidence Rule 801(d)(2)(E), made the statements "not hearsay." On appeal, Pedraza argues that there is "no evidentiary support to suggest" these statements were part of a conspiracy. *Id.* at 17. But Pedraza's arguments are not well taken. Gavin plainly testified that he, Pedraza, and Jesus had formed a plan to set up a fictitious drug buy with Sage and Snyder at Snyder's residence, during which they intended to rob Sage and Snyder and use firearms to do so. His receipt of a firearm from Jesus the day of the planned robbery and the statement from

---

[1] Pedraza mentions a third statement by Gavin, but it appears that the trial court sustained defense counsel's objection to that statement, and in any event Pedraza's argument on this third statement is not supported by cogent reasoning. We therefore do not consider it.

Jesus to continue with the plan when, en route, Gavin expressed misgivings were not hearsay under Indiana Evidence Rule 801(d)(2)(E). We affirm the trial court's rejection of Pedraza's objections to Gavin's testimony.

[13] Pedraza next asserts that the trial court abused its discretion when, during his cross examination of Gavin, the court "did not allow counsel . . . to utilize three . . . letters written by Mr. Gavin to the State."[2] *Id.* at 24. In those letters, Gavin sought to negotiate a plea agreement with the State in exchange for testifying against Pedraza and others. Pedraza's precise argument on this issue is not clear, however, as there is no question that Gavin testified that he repeatedly wrote letters to the State in which he sought to negotiate down his charges in exchange for providing testimony. It appears that Pedraza is disappointed that he did not get to editorialize to the jury that Gavin was "begging" the prosecutor for leniency. Appellant's Br. at 24. But we cannot say that the court abused its discretion on such grounds. And neither did the court err when it permitted Pedraza to cross-examine Gavin about the substance of the letters but otherwise restricted the letters from being directly admitted into evidence.

[14] Next, Pedraza contends that the court erred when it limited his cross examination of Daun Powers, the State's forensic expert. Again, Pedraza's exact argument here is not clear. He asserts that he was impermissibly denied

---

[2] While the letters in question are in the Appellant's Appendix, there is no indication in the record that these letters were labeled as exhibits and offered in evidence.

the opportunity to challenge Powers' analytical method, but we agree with the State that the record does not reflect any such limitation during his cross examination of Powers. Indeed, the only limitation in the record occurred when Pedraza's counsel asked a question that Powers had already answered. There is no reversible error on this issue.

[15] Finally, Pedraza argues that the trial court erred when it did not permit Pedraza to ask an investigating detective about an out-of-court statement made by Sage that Bethel had fired the first shot. The court excluded Sage's out-of-court statement to the detective as hearsay. During his testimony, Gavin testified that Pedraza had shot first. Pedraza did not call Sage to testify.

[16] In his offer of proof, Pedraza represented that he was not asking this information from the detective for the truth of the matter asserted but to understand the course of his investigation. However, the substance of Pedraza's argument on appeal is that the detective's statements should have been admitted for the truth of the matter asserted. But that would render the statements inadmissible hearsay. And insofar as Pedraza argues that the statement was in fact relevant to the course of the investigation, Pedraza does not demonstrate why it would have mattered to investigators at this scene who shot first. Accordingly, we affirm the trial court's decision to exclude this information.

[17] In sum, the trial court is afforded wide discretion in its evidentiary decisions, and none of Pedraza's arguments on appeal cause us to question the court's

exercise of that discretion during Pedraza's jury trial. Therefore, we affirm the trial court's evidentiary decisions and Pedraza's two convictions for murder.

[18]    Affirmed.

Bradford, C.J., and Mathias, J., concur.